UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
SEA TOW SERVICES INTERNATIONAL,
INC.

                    Plaintiff,
                                                ORDER
          -against-                             20-CV-2877(JS)(SIL)

TAMPA BAY MARINE RECOVERY, INC.,
a Florida corporation;
ERICH A. JAEGER; ABIGAIL JAEGER;
KATHLEEN MORENO; and
RAUL MORENO,

                    Defendants.
-----------------------------------X

APPEARANCES
For Plaintiff:                    Mitchell A. Stein, Esq.
                                  Stein Law, P.C.
                                  24 Woodbine Avenue, Suite 4
                                  Northport, New York 11768

                                  Scott Michael Kessler, Esq.
                                  Akerman LLP
                                  520 Madison Avenue, 20th Floor
                                  New York, New York 10022

                                  Steven R. Wirth, Esq.
                                  Ackerman LLP
                                  401 East Jackson Street, Suite 1700
                                  Tampa, Florida 33602

For Defendants:
Tampa Bay Marine Recovery         John Alexander Karol, Esq.
Inc., Erich A. Jaeger &           Avi Strauss, Esq.
Abigail Jaeger                    Richard L. Rosen, Esq.
                                  The Richard L. Rosen Law Firm, PLLC
                                  110 East 59th Street, 23rd Floor
                                  New York, New York 10022

                                  Sarah Gogal Passeri, Esq.
                                  Holland & Knight LLP
                                  31 West 52nd Street
                                  New York, New York 10019

1

Kathleen Moreno &             Jason H. Baruch, Esq.
Raul Moreno                   Noel Boeke, Esq.
                              Paul Punzone, Esq.
                              Sarah Gogal Passeri, Esq.
                              Holland & Knight LLP
                              100 North Tampa Street, Suite 4100
                              Tampa, Florida 33602


For Proposed Defendant        Jason H. Baruch, Esq.
Tampa Bay Marine & Towing,    Noel Boeke, Esq.
Inc.:                         Paul Punzone, Esq.
                              Sarah Gogal Passeri, Esq.
                              Holland & Knight LLP
                              100 North Tampa Street, Suite 4100
                              Tampa, Florida 33602

SEYBERT, District Judge:

        Before the Court is Proposed Defendant Tampa Bay Marine

Towing & Services, Inc.'s ("TBMT") Motion to Intervene ("Motion")

(Mot., ECF No. 48) and accompanying memoranda of law in support

thereof (TMBT Br., ECF No. 49; Reply, ECF No. 68).   Defendants

Kathleen Moreno, Raul Moreno (the "Moreno Defendants"), Erich A.

Jaeger, Abby Jaeger and Tampa Bay Marine Recovery Inc. ("TBMR,"

and together with Erich A. and Abby Jaeger, the "Jaeger

Defendants") do not oppose the Motion to Intervene.   Plaintiff Sea

Tow Services, International, Inc. ("Plaintiff" or "Sea Tow")

opposes intervention.   (Opp., ECF No. 52.)   For the reasons that

follow, the Motion is GRANTED.

BACKGROUND[1]

I.    The Breakdown of Sea Tow and TBMT's Relationship

Sea Tow is an international marine assistance provider and franchisor of "Sea Tow" trademarks.   Sea Tow provides assistance for boaters on the water, including mechanical assistance, towing and other services on a member and non-member basis.   In order to offer its service across the globe, Sea Tow enters into franchise agreements like the one underpinning the present dispute.

On January 29, 2015, the Moreno Defendants purchased 100% of Proposed Defendant TBMT, a Sea Tow franchisee for the Tampa Bay Area of Responsibility ("AOR"), from Eugene N. Shute, IV ("Shute").   (Am. Compl. ¶ 26.)   The Moreno Defendants paid a portion of the purchase price with a promissory note, payable by TBMT and the Moreno Defendants to Shute (hereafter, the "Shute Note").   (Id. ¶ 41.)   The Moreno Defendants also secured three separate loans from Synovus Bank to finance the acquisition of TBMT and provide working capital for their investment (hereafter, the "Synovus Loans").   (Id. ¶ 53.)   On April 23, 2015, Sea Tow and TBMT entered into a Franchise Agreement to govern TBMT's operations.   (Id. ¶ 22; Franchise Agreement, Frohnhoefer Decl., Ex. C, ECF No. 15-2.)

---

[1] The facts are drawn from the Amended Complaint (Am. Compl., ECF No. 73) and the parties' briefs.

The Franchise Agreement includes certain requirements and provisions relevant to the present Motion.  First, the Moreno Defendants were required to personally guarantee TBMT's obligations under the Franchise Agreement.  (Am. Compl. ¶ 28-29; Franchise Agreement § 9.18)   Second, the Franchise Agreement provided that the franchisee would be deemed in default and the agreement would terminate automatically in the event the franchisee was subject to a suit to foreclose any lien or mortgage against the franchisee or its franchised business and such suit was not dismissed within thirty days.  (Am. Compl. ¶ 32; Franchise Agreement § 16.1.)  Third, the Franchise Agreement further provided that, upon termination of the agreement, TBMT would be required to reimburse Sea Tow the pro rata portion of any membership fees received.[2]  (Am. Compl. ¶ 33; Franchise Agreement § 17.11.)

Notwithstanding the apparent success of Proposed Defendant TBMT as an enterprise, the Moreno Defendants struggled to meet their financial obligations.  First, sometime in 2017, the Moreno Defendants and TBMT defaulted on the Shute Note, prompting Shute to file a lawsuit to collect on it.  (Am. Compl. ¶ 42.)  To settle the lawsuit, TBMT and the Moreno Defendants entered into a

---

[2] Customers pay to be members of Sea Tow and to receive covered services from Sea Tow franchisees.  The membership fees are paid to Sea Tow, which apportions the fees to the appropriate franchisee, provided the franchisee is in good standing and not in default under the franchise agreement.  (Am. Compl. ¶¶ 30-31.)

new promissory note, with Sea Tow guaranteeing performance thereunder (hereafter, the "New Note"). (Id.)  In its Amended Complaint, Sea Tow alleges that at the time it guaranteed the New Note, it relied on "false representations made by TBMT and the Moreno Defendants." (Id. ¶ 114.)  Second, the Moreno Defendants defaulted on the Synovus Loans, prompting Synovus Bank to commence a collection action on April 10, 2019 against the Moreno Defendants and TBMT (the "Synovus Action"). (Id. ¶ 55.)  The Synovus Action was not dismissed within thirty days, which Sea Tow contends triggered the automatic termination clause under the Franchise Agreement. (Id. ¶¶ 57-58.)  The Moreno Defendants dispute the application and enforceability of the termination clause, including in their motion to dismiss. (See, e.g., Moreno Defs. Br., ECF No. 58 at 11-21.)

On October 31, 2019, Sea Tow, TBMT and the Moreno Defendants executed a Termination and Relinquishment Agreement ("TARA") that provided Sea Tow would appoint a manager to oversee the Tampa Bay AOR. (Am. Compl. ¶ 60.)  On November 11, 2019, Sea Tow appointed Tampa Bay Marine Recovery, Inc. ("TBMR"), owned and operated by Kathleen Moreno's son, Erich Jaeger, to provide services to Sea Tow customers within the Tampa Bay AOR pursuant to a Manager Delegation Agreement. (Id. ¶ 65.)  By entering into the Manager Delegation Agreement, Sea Tow believes it passed on the opportunity to sell TBMT on the open market. (Id. ¶¶ 116-19.)

5

Shortly thereafter, on February 19, 2020, Proposed Defendant TBMT filed for bankruptcy protection in the United States Bankruptcy Court for the Middle District of Florida. ("Main Bankruptcy Case," No. 20-BK-1418.) In the Main Bankruptcy Case, TBMT commenced an adversary proceeding against Sea Tow, disputing Sea Tow's termination of the Franchise Agreement, among other actions. ("Florida AP," No. 20-AP-390.) On December 7, 2020, the Main Bankruptcy Case was dismissed, and the Florida AP was dismissed without prejudice. (Main Bankruptcy Case, No. 20-BK-1418, Order, ECF No. 155.)

## II.   Sea Tow Files Suit

On June 29, 2020, Sea Tow initiated this action against the Moreno and Jaeger Defendants. Sea Tow alleges three counts against the Moreno Defendants for (1) fraud, (2) breach of the guaranty, and (3) breach of the implied covenant of good faith and fair dealing. On September 4, 2020, the Moreno Defendants filed a motion to stay these proceedings pending the Main Bankruptcy Case (Mot. to Stay, ECF No. 32), but Magistrate Judge Locke denied the motion shortly after the Main Bankruptcy Case was dismissed (Min. Entry, ECF No. 46). Accordingly, Defendants sought leave to file their motions to dismiss and answers to Sea Tow's complaint, and the Court set a briefing schedule. (See Dec. 23, 2020 Elec.

Order.)[3]  Shortly after Defendants requested leave to file motions

to dismiss, Proposed Defendant TBMT filed the present Motion to

Intervene, which Plaintiff, unsurprisingly, opposes.   Further,

after TBMT filed its Motion to Intervene and the Defendants filed

their respective motions to dismiss, Plaintiff exercised its right

to amend its complaint.   (ECF No. 74.)[4]

<h1 style="text-align:center">DISCUSSION</h1>

As each side delights in pointing out, the present

dispute has the parties disavowing earlier litigation positions.

In its motion to dismiss the Florida AP, for example, Sea Tow

argued that TBMT could and perhaps should raise the claims it

brought in the adversary proceeding in the instant lawsuit, through

intervention or otherwise.  (See TBMT Br. at 4-5 (quoting Sea Tow's

Reply in support of its motion to dismiss the Florida AP).)  For

its part, TBMT declined to intervene in this action during the

---

[3] The parties are also litigating a protective order.  (E.g., Jan. 21, 2021 Elec. Order.)

[4] The Court recognizes that Federal Rule of Civil Procedure 24(c) requires "a pleading setting forth the claim or defense for which intervention is sought," and that, because Plaintiff filed its Amended Complaint while the Motion to Intervene was pending, TBMT's accompanying pleading, filed with its Motion, does not address the Amended Complaint.  (See TBMT's Proposed Answer, Affirmative Defenses, and Counterclaims, ECF No. 49-1.)  However, "nothing in Rule 24(c) . . . obligates an applicant for intervention to amend his proposed defenses and counterclaims while the motion to intervene is still pending," especially where, as here, the accompanying pleading fulfills the purpose of Rule 24(c) by informing the Court and the parties of the position the proposed defendant intends to assert.  Piedmont Paper Products, Inc. v. American Financial Corp., 89 F.R.D. 41, 42-43 (S.D. Ohio 1980).

pendency of the Main Bankruptcy Case, preferring to raise its claims in the bankruptcy case and related adversary proceedings. Now the shoe is on the other foot, as it were, with TBMT seeking to intervene as a defendant in this lawsuit and Sea Tow opposing its request.   The Court looks past the parties' strategic statements and to the substance of Federal Rule of Civil Procedure 24 ("Rule 24") to resolve the present dispute.

## I.   Intervention as of Right

"The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved.  However, the rule is not intended to allow for the creation of whole new suits by intervenors." Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990).   There are two types of intervention under Rule 24: (1) intervention   as   of   right   under   Rule   24(a)(2),   and (2) permissive   intervention   under   Rule   24(b).    Rule   24(a)(2) provides:

> On timely motion, the court must permit anyone
> to intervene who . . . claims an interest
> relating to the property or transaction that
> is subject to the action, and is so situated
> that disposing of the action may as a
> practical matter impair or impede the movant's
> ability to protect its interest, unless
> existing parties adequately represent that
> interest.

Therefore, an applicant must establish the following to intervene as a matter of right: "(1) a timely motion; (2) an

interest relating to the property or transaction that is the subject of the action; (3) an impairment of that interest without intervention; and (4) the movants' interest is not adequately represented by the other parties in the litigation." Nu-Chem Labs., Inc. v. Dynamic Labs., Inc., No. 96-CV-5886, 1998 WL 35180780, at *2 (E.D.N.Y. 1998) (Seybert, J.) (citing United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994)). The test is "flexible," and courts "generally look at all the factors together rather than focus narrowly on a single one." Basciani Foods, Inc. v. Mid Island Wholesale Fruit & Produce, Inc., No. 09-CV-4585, 2011 WL 17524, at *3 (E.D.N.Y. 2011) (Seybert, J.). Nevertheless, "[f]ailure to satisfy any one of these requirements is sufficient ground to deny the application." Friends of E. Hampton Airport, Inc. v. Fed. Aviation Admin., No. 15-CV-0441, 2016 WL 792411, at *4 (E.D.N.Y. 2016) (Seybert, J.) (quoting In re Pandora Media, Inc., No. 12-CV-8035, 2013 WL 6569872, at *5 (S.D.N.Y. Dec. 13, 2013) (emphasis in original) (citation omitted)). District courts have considerable discretion in deciding motions to intervene under Rule 24(a)(2). See Basciani, 2011 WL 17524, at *3.

The parties dispute each requirement for intervention as of right. The Court addresses their arguments in turn.

A.    Whether TBMT's Motion Is Timely

Courts have the "discretion to evaluate the timeliness of a motion to intervene based on all the circumstances including, '(1) how long the applicant had notice of the interest before it made a motion to intervene; (2) prejudice to existing parties resulting from the delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.'" Keybank, Nat'l Ass'n v. Quality Payroll Sys., Inc., No. 06-CV-3013, 2007 WL 9710295, at *5 (E.D.N.Y. 2007) (Seybert, J.) (quoting Pitney Bowes, Inc., 25 F.3d at 70).

Having evaluated the foregoing factors, the Court finds TBMT's motion is timely.  First, this case is in its early stages -- Plaintiff recently filed its first amended complaint, mooting the pending motions to dismiss, and discovery has not yet commenced -- so "neither the existing parties nor the progress of this case would be prejudiced by [TBMT's] intervention." First Data Merch. Servs. LLC v. MM Dev. Co., No. 19-CV-10964, 2020 WL 2215457, at *2 (S.D.N.Y. May 6, 2020); see also Nu-Chem Labs., Inc., 1998 WL 35180780 at *3.  It is true, as Sea Tow points out, that TBMT knew about the present action since it was filed on June 29, 2020.  Yet at that time, TBMT was pursuing reorganization through bankruptcy, and the Court is disinclined to hold against TBMT its decision to preserve the automatic stay and its belief, which proved incorrect,

10

Case 2:20-cv-02877-JS-SIL   Document 75   Filed 02/01/21   Page 11 of 20 PageID #: 1663

that the Florida AP was the proper forum for this dispute. Rather, the Court notes that as soon as the Main Bankruptcy Case was dismissed, TBMT quickly moved to intervene, filing its motion less than two weeks later.

Moreover, intervention will not prejudice Sea Tow by unnecessarily complicating the case or generating costly or duplicative discovery. (See Opp. at 8-9.) Any complexity brought about by TBMT's intervention here pales in comparison to the complexity identified in Washington Electric Cooperative, which Sea Tow cites, where the Second Circuit affirmed the denial of a motion to intervene brought by a state agency because it would have transformed a "conventional contractual dispute between two parties" for under one million dollars in damages into one in which two plaintiffs, one purporting to represent the interests of six interested non-parties, sought over six million dollars in damages. 922 F.2d at 97 (discussing one of several reasons that the district court did not abuse its discretion in denying the motion). The Court also anticipates that intervention will streamline, not duplicate, discovery, because TBMT has discoverable information related to several agreements and issues relevant here. With TBMT as a party-defendant, there will be no issue as to whether the Moreno Defendants have possession over certain TBMT documents such that they are obligated to disclose them in the course of discovery.

11

Last, and as discussed infra, because TBMT has significant contractual interests in this litigation, the Court concludes that TBMT is likely to be prejudiced if it cannot intervene.  Accordingly, TBMT's motion is timely.

B.    Whether TBMT Has a Legal Interest in the Litigation

To intervene as of right, the proposed intervenor must have more than a "remote or contingent" interest in the transaction that is subject of the action; rather, it must establish an interest that is "direct, substantial, and legally protectable." Nu-Chem Labs., Inc., 1998 WL 35180780, at *3 (citing New York News, Inc. v. Kheel, 973 F.2d 484, 486 (2d Cir. 1992)).

The Court finds that Proposed Defendant TBMT has an interest in this litigation that is direct, substantial and legally protectable, because the Court must adjudicate the validity of the termination of TBMT's Franchise Agreement to determine whether the Moreno Defendants (and TBMT) are liable for the pro rata share of membership fees TBMT received after the Franchise Agreement was terminated but before the parties entered into the TARA.  Simply put, according to Sea Tow's allegations, TBMT is a party to several of the at-issue agreements, including the original sales agreement for TBMT (Am. Compl. ¶ 26); Franchise Agreement; Guaranty (Guaranty, Kessler Decl., Ex. A, ECF No. 34-1); the Shute Note and New Note (Am. Compl. ¶¶ 41-42); and the TARA (Am. Compl. ¶ 60); among other potentially relevant agreements that may be disclosed

12

through discovery.   Thus, this case is unlike Mastercard
International Inc. v. Visa International Services Ass'n, where the
Second Circuit affirmed the district court's denial of Visa's
motion to intervene because Visa was "a stranger to the contractual
dispute between MasterCard and FIFA."   471 F.3d 377, 390 (2d Cir.
2006).    TBMT is anything but a stranger here, and Sea Tow's
allegations will require the Court to interpret and adjudicate its
rights under several agreements to which it is a party.

Moreover, Plaintiff alleges that TBMT -- not just the
Moreno Defendants -- made false representations to Sea Tow when it
guaranteed the New Note.   (Am. Compl. ¶¶ 114-15.)   This is not
surprising, since TBMT is a central actor in the alleged fraud
scheme, the object of which was to free TBMT of its raft of
liabilities and return the Tampa Bay AOR to TBMT's control.   (Id.
¶¶ 110-21.)   For example, to further the alleged scheme, Sea Tow
alleges TBMT abused the bankruptcy process by disclosing certain
confidential financial information in the Main Bankruptcy Case.
(Id. ¶¶ 87-92.)

Based on Sea Tow's allegations against TBMT, as well as
TBMT's contractual interests, the Court concludes that TBMT has an
interest in the present litigation.

13

C.    Whether TBMT's Interest Would Be Impaired without
      Intervention

The third requirement is satisfied where prospective intervenors demonstrate "that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest."  Pitney Bowes, Inc., 25 F.3d at 69-70. TBMT raises "stare decisis" concerns, but "[b]ecause this is not a case of first impression involving the resolution of new legal issues but a conventional contractual dispute, the doctrine of stare decisis also will not control future, related actions by [proposed intervenor]."  Washington Elec. Coop., Inc., 922 F.2d at 98.   TBMT is not facing products liability litigation across "twenty-two" separate forums, like the proposed intervenor in Sackman v. Liggett Group, Inc., 167 F.R.D. 6, 21 (E.D.N.Y. 1996), a case relied on by TBMT in support of its position.  (See TBMT Br. at 10.)  The real issue for TBMT is not stare decisis, but collateral  estoppel,  also  known  as  issue  preclusion. Specifically, if the Court finds that the Franchise Agreement terminated by its own terms based on the Synovus Action remaining pending against TBMT for more than thirty days, and that the termination clause is valid, then that holding as to the validity of the termination clause may be binding on TBMT in future actions. This is the case even though TBMT is not a party here, because it could be held "in privity" with the Moreno Defendants.  Where issue

14

preclusion "may impair a proposed intervenor's ability to vindicate its interests in a separate lawsuit, courts have found the requisite impairment of interest to satisfy Rule 24(a)." Home Ins. Co. v. Liberty Mut. Ins. Co., No. 87-CV-0675, 1990 WL 188925, at *5 (S.D.N.Y. Nov. 20, 1990) (citations omitted); see also New York v. Gutierrez, No. 08-CV-2503, 2008 WL 5000493, at *6 (E.D.N.Y. Nov. 20, 2008); Keybank, Nat'l Ass'n, 2007 WL 9710295, at *6. Moreover, as noted supra, this litigation will adjudicate TBMT's rights and obligations under several agreements, including the Franchise Agreement, Guaranty, and the Shute and New Notes. (See Am. Compl. ¶¶ 163-169.) Accordingly, TBMT's interest would be impaired without intervention.

> D.   Whether TBMT's Interest Is Adequately Represented by the Moreno Defendants

The intervening party bears the burden of providing that its interests are not adequately represented by the existing parties, but that burden is "minimal." Keybank Nat'l Ass'n, 2007 WL 9710295, at *6. However, the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001) (quoting Wash. Elec. Co-op., Inc., 922 F.2d at 98). Where the court finds there is an identify of interest, the party seeking intervention must rebut the presumption of adequate

representation, such as by demonstrating "collusion, adversity of interest, nonfeasance, or incompetence."  Id.

Here, TBMT and the Moreno Defendants, represented by the same counsel, have the same ultimate objective: dismiss Sea Tow's claims and perhaps even revive certain rights under the Franchise Agreement.  Because the Court finds an identity of interest exists, TBMT must rebut the presumption of adequate representation.  To do so, TBMT argues that, "[a]s principal obligor [under the Franchise Agreement], TBMT has additional defenses and direct counterclaims that the Moreno's cannot effectively raise," specifically, counterclaims relating to TBMT's purported continuing interest and rights under the Franchise Agreement.  (TBMT Br. at 11-12.) Moreover, TBMT contends there is daylight between its interests and those of the Moreno Defendants, because in the event the Moreno Defendants are found liable, they will possess a right of action against TBMT for indemnification.  (Reply at 5.)

Although a close call, based on TBMT's showing, and in the interest of fulfilling Rule 24's purpose of "prevent[ing] a multiplicity of suits where common questions of law or fact are involved," Washington Elec. Coop., Inc., 922 F.2d at 97, the Court finds that TBMT has rebutted the presumption of adequate representation here.  As the court in Fredericks v. Shapiro recognized in this context, a guarantor (here, the Moreno Defendants) does not adequately represent the rights of a principal

16

obligor (here, TBMT) where the principal obligor seeks to assert counterclaims that are not available to the guarantor.  160 F.R.D. 26, 28 (S.D.N.Y. 1995).  Additionally, TBMT's and the Moreno Defendants' interests may "diverge" in the event Sea Tow prevails on its claims against the Moreno Defendants, at which point the Moreno Defendants would seek indemnification from TBMT. Steinhardt v. Shadow, No. 16-CV-4222, 2018 WL 4278334, at *2 (S.D.N.Y. Mar. 6, 2018) ("Under New York law . . . a guarantor is 'equitably entitled to full indemnity against the consequences of a principal obligor's default.'"); see also Home Ins. Co., 1990 WL 188925, at *6 (finding no adequate representation where "potential conflict of interest" could arise between the proposed intervenor and its insurer in indemnification and contribution context).

Accordingly, for the foregoing reasons, the Court concludes that TBMT has met the requirements to intervene as of right.

E.   Sea Tow's Remaining Arguments

Sea Tow makes two additional arguments against intervention: (1) TBMT filed its motion in the name of "Tampa Bay Marine & Towing, Inc.," an entity that does not exist, rather than "Tampa Bay Marine Towing & Service, Inc.," the franchisee (Opp. at 14); and (2) TBMT's motion should be denied because its counterclaims are futile (id. at 11-13).  First, however slipshod, the Court finds TBMT's mistake amounts to no more than a

17

scrivener's error and is not a basis to deny the motion.   And Sea

Tow's second argument puts the proverbial cart before the horse.

As the Second Circuit explained in <u>Brennan v. New York City Board</u>

<u>of Education</u>:

> "[E]xcept for allegations frivolous on their
> face, an application to intervene cannot be
> resolved by reference to the ultimate merits
> of the claims which the intervenor wishes to
> assert following intervention, but rather
> turns on whether the applicant has
> demonstrated that its application is timely,
> that it has an interest in the subject of the
> action, that disposition of the action might
> as a practical matter impair its interest, and
> that representation by existing parties would
> not adequately protect that interest. . . .
> The sufficiency of an interest entitles the
> intervenor to contest the merits of his/her
> claim based on that interest.   An interest
> that is otherwise sufficient under Rule
> 24(a)(2) does not become insufficient because
> the court deems the claim to be legally or
> factually weak.

260 F.3d 123, 129–30 (2d Cir. 2001) (internal citations omitted).

Accordingly, the Court is not persuaded by Sea Tow's remaining

arguments.

II.  <u>Permissive Intervention</u>

In the alternative, the Court finds that TBMT has met

the requirements for permissive intervention under Rule 24(b).

Permissive intervention "is discretionary with the trial court."

<u>H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.</u>, 797 F.2d 85,

89 (2d Cir. 1986).   "'In exercising its discretion,' the court

must 'consider whether the intervention will unduly delay or

prejudice the adjudication of the rights of the original parties.'" Citizens Against Casino Gambling in Erie Cnty. v. Hogen, 417 F. App'x 49, 50 (2d Cir. 2011) (citing H.L. Hayden Co. of N.Y., 797 F.2d at 89 (2d Cir. 1986) (quoting Rule 24(b))).  "Additional relevant factors include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  H.L. Hayden Co. of N.Y., 797 F.2d at 89.

As noted supra, the Court finds intervention will not delay proceedings, which remain in their early stages, or prejudice Sea Tow.  Moreover, TBMT's involvement will significantly contribute to the full development of the underlying factual issues, given its role in the allegedly fraudulent scheme and connection to the disputed agreements.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

Accordingly, for the reasons stated herein, Proposed Defendant TBMT's Motion to Intervene is GRANTED. **IT IS HEREBY ORDERED** that:

(1)   The Clerk of the Court shall add Tampa Bay Marine Towing & Services, Inc. as a defendant in this action.   TBMT has equal standing with the original parties; however, TBMT is subject to the proceedings that have occurred prior to its intervention, such as the Agreed Preliminary Injunction (ECF No. 25); and

(2)   The Defendants shall answer or move to dismiss Sea Tow's Amended Complaint within twenty (20) days of receipt of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: February _1_, 2021
       Central Islip, New York