**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- X
: 
SEA TOW SERVICES INTERNATIONAL,            :
INC.,                                                        :         Civil Action No: 2-20-CV-02877-JS-SIL
:
Plaintiff,                    :
:
-against-                 :
:
TAMPA BAY MARINE RECOVERY, INC., a         :
Florida corporation, ERICH A. JAEGER,             :
ABIGAIL JAEGER,   KATHLEEN MORENO,     :
RAUL MORENO, TAMPA BAY MARINE          :
TOWING & SERVICE, INC., and PREFERRED    :
BRANDS, INC.,                                              :
:
Defendants.               :
-------------------------------------------------------------- X


**JAEGER DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**


John A. Karol, Esq. (JK-9899)
Richard L. Rosen, Esq. (RR-3114)
Avi Strauss, Esq. (AS-1678)
110 East 59th Street, 23rd Floor
New York, NY 10022
Tel.:    (212) 644-6644
Fax:    (212) 644-3344
jak@rosenlawpllc.com
rlr@rosenlawpllc.com
*Counsel for Jaeger Defendants*

## TABLE OF CONTENTS

I.     Preliminary Statement ………………………………….…………………    1

II.    Factual Allegations and Pleadings…………..…………………….………..    3

III.   Legal Standards……………………………………………………………    6

   A. FRCP 12(b)(6) Motion to Dismiss Standard………………………………    6

IV.    Legal Arguments for Dismissal…………………………………………....    7

   A. Plaintiff's Count I Claim for Fraud and Conspiracy………………………..    7

   B. Plaintiff's Trademark Infringement and Dilution Claims
      Against TBMR and E. Jaeger for a Permanent Injunction
      (Count II) and for Damages (Count III)………………………………………    10

   C. Plaintiff's Breach of Contract Claims Against TBMR,
      Jaeger, and A. Jaeger Must Be Dismissed (Counts IV and V)……………..    13

      1.  As A Matter Of Public Policy, The MA, FA And
          Other Ancillary Contracts Are Illegal Contracts And
          Therefore Void And Unenforceable…………………………………….    14

      2.  Breach of Franchise Agreement (FA) Claims Under Count IV
          Must Fail Because the Jaeger Defendants are Not Parties to the FA…..    21

      3.  Plaintiff's Breach of Contract Claim Against TBMR and E. Jaeger
          For Membership Fees Should Be Dismissed As They Are
          Contradicted by the Express Terms of Both the MA and FA…………..    22

      4.  Plaintiff's Breach of Contract Claim Against TBMR,
          E. Jaeger, and A. Jaeger (For Disclosure of Confidential Information
          to a Third Party) (Count IV) Should Be Dismissed……………………..    24

      5.  Plaintiff's Breach of Contract Claim
          (For Breach of FA's Non-Disclosure Provisions)
          Should Be Dismissed…………………………………………………….    26

      6.  Plaintiff's Breach of Contract Claim (For Breach of Non-Compete
          Agreements) Should Be Dismissed……………………………………    27

D.  Plaintiff's Replevin Claim (Count VII) Should Be Dismissed…………     28

E.  The Count VIII Claims Pursuant to
GBL §§ 349, 350-A Should be Dismissed…………………………………     29

V.     Conclusion…………………………………………………………………     30

# TABLE OF AUTHORITIES

## CASES

*Ahmed v. GEO USA LLC,*
2015 U.S. Dist. Lexis 39679 (S.D.N.Y. 2015) ……………………………………   10

*A.J. Temple Marble & Tile v Union Carbide Marble Care,*
162 Misc. 2d 941 (Sup. Ct., N.Y. Co. 1994)…………………………………………   15

*Aleem v Experience Hendrix, L.L.C.,*
2017 U.S. Dist. LEXIS 113613 (S.D.N.Y. 2017)……………………………………   28

*A.P. Moller-Maersk A/S v. Ocean Express Miami,*
590 F. Supp. 2d 526 (S.D.N.Y. 2008)………………………………………………….   16

*BDO Seidman v. Hirshberg,*
93 N.Y.2d 382 (1999)………………………………………………………………………   20

*Berman v. Sugo LLC,*
580 F. Supp. 2d 191 (S.D.N.Y. 2008)…………………………………………………   14

*Bigio v Coca-Cola Co.,*
675 F.3d 163 (2d Cir. 2012) …………………………………………………………   9

*Boarding Sch. Review, LLC v Delta Career Educ. Corp.,*
2013 U.S. Dist. LEXIS 48513 (S.D.N.Y. 2013)………………………………………..   12, 13

*CA, Inc. v. Simple.com, Inc.,*
621 F. Supp 2d 45 (E.D.N.Y. 2009) ...............................................................................   29

*Carson Opt., Inc. v. Prym Consumer USA, Inc.,*
11 F. Supp 3d 317 (E.D.N.Y. 2014) ……………………………………………………   12

*Childers v. NY & Presbyt. Hosp.,*
36 F. Supp. 3d 292 (S.D.N.Y. 2014)……………………………………………………   14

*Chin v Planet Motor Cars, Inc.,*
2016 U.S. Dist. LEXIS 47372 (E.D.N.Y. 2016)………………………………………..   30

*Coca-Cola N. Am. v Crawley Juice, Inc.,*
2011 U.S. Dist. LEXIS 52813 (E.D.N.Y. 2011) ................................................................   29

*Crye Precision LLC v Bennettsville Print.,*
755 F. App'x 34 (2d. Cir. 2018)…………………………………………………   20

*Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.,*
451 F.3d 295 (2d Cir. 2006) …………………………………………………   10

*ECRI v McGraw-Hill, Inc.,*
809 F.2d 223 (3d Cir. 1987)………………………………………………….   13

*EMA Fin., LLC v. Joey NY, Inc.,*
2019 U.S. Dist. LEXIS 161454 (S.D.N.Y. 2019) ………………………………   7

*Giugliano v. FS2 Capital Partners, LLC,*
2015 U.S. Dist. LEXIS 118679 (E.D.N.Y. 2015)………………………………   14

*Goddard Sys. V Gondal,*
2018 U.S. Dist. LEXIS 52945 (D. Del. 2018)………………………………….   13

*Goldblatt v. Englander Communications, LLC,*
2007 U.S. Dist. LEXIS 4278 (S.D.N.Y. 2007)…………………………………   22

*Goshen v Mut. Life Ins. Co.,*
98 N.Y.2d 314 (N.Y. 2002)……………………………………………………   29

*GWG MCA Capital, Inc. v. Nulook Capital, LLC,*
2019 U.S. Dist. LEXIS 36983 (E.D.N.Y. 2019) ………………………………   7

*Hatteras Enters. V. Forsythe Cosmetic Group, Ltd.,*
2018 U.S. Dist. LEXIS 68792 (E.D.N.Y. 2018)………………………………   8

*Intelligen Power Sys., LLC v. dVentus Techs. LLC,*
2015 U.S. Dist. LEXIS 71078 (S.D.N.Y. 2015)………………………………   29

*Jackson v BellSouth Telecomms.,*
372 F.3d 1250 (11th Cir. 2004)………………………………………………   9

*Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.,*
296 A.D.2d 103 (1st Dept. 2002)……………………………………………   26

*King Computer, Inc. v. Beeper Plus Inc.,*
1993 U.S. Dist. LEXIS 2707 (S.D.N.Y. 1993)………………………………..   18

*Koch v Acker, Merrall & Condit Co.,*
18 N.Y.3d 940 (2012)……………………………………………………………………   30

*Kohler Co. v Bold Intl. FZCO,*
422 F. Supp. 3d 681 (E.D.N.Y. 2018)……………………………………………   13

*Kramer v Pollock-Krasner Found.,*
890 F. Supp. 250 (S.D.N.Y. 1995) ………………………………………………   9

*Lama Holding Co. v. Smith Barney Inc.,*
88 N.Y.2d 413 (1996)……………………………………………………………..   10

*McDonald v. Elkholy,*
2017 U.S. Dist. LEXIS 119030, (E.D.N.Y. 2017) ..........................................   27

*Metro-Gem Leasing & Funding Corp. v. Dancy,*
2017 U.S. Dist. LEXIS 133379 (E.D.N.Y. 2017) ……………………………………   6

*Mon-Shore Mgt., Inc. v Family Media, Inc.,*
584 F. Supp. 186 (S.D.N.Y. 1984)………………………………………………   15

*Mountz v Global Vision Prods.,*
3 Misc. 3d 171 (Sup. Ct. N.Y. Co. 2003)…………………………………………..   29

*Mu Qing His v. Wen Qing Chen,*
2018 U.S. Dist. LEXIS 197156 (E.D.N.Y. 2018)……………………………………   28

*N. Am. Olive Oil Assn. v. D'Avolio Inc.,*
457 F. Supp. 3d 207 (E.D.N.Y. 2020) ……………………………………………..   6

*Natl. Grid Corp. Servs., LLC v. Brand Energy Servs., LLC,*
2017 U.S. Dist. LEXIS 47875 (E.D.N.Y. 2017)……………………………………..   23

*Oswego Laborers' Local 214 Pension Fund v. Mar. Midland Bank, N.A.,*
85 N.Y.2d 20 (1995)...........................................................................................   29

*Porrazzo v. Bumble Bee Foods, LLC,*
822 F. Supp. 2d 406 (S.D.N.Y. 2011) ……………………………………………..   6

*Procter & Gamble Co. v. Quality King Distrib., Inc.,*
123 F. Supp. 2d 108 (E.D.N.Y. 2000)……………………………………………..   13

*Pub. Free Will Corp. v. Verizon Communs. Inc.,*
2017 U.S. Dist. LEXIS 39168 (E.D.N.Y. 2017) …………………………………….. 10

*Ricatto v. M3 Innovations Unlimited, Inc.,*
2019 US Dist. LEXIS 210777 (S.D.N.Y. 2019)…………………………………… 18

*Schlessinger v. Valspar Corp.,*
686 F.3d 81 (2d Cir. 2012)……………………………………………………… 18

*Schwartzco Enters. LLC v TMH Mgt., LLC,*
60 F. Supp. 3d 331 (E.D.N.Y. 2014)…………………………………………… 8, 15

*Stutts v. De Dietrich Group,*
2006 U.S. Dist. LEXIS 47638 (E.D.N.Y. 2006) ………………………………… 9

*Telecom Intl. Am., Ltd. v. AT&T Corp.,*
280 F.3d 175 (2d. Cir 2001) …………………………………………………… 9

*United Mdse. Wholesale, Inc. v. IFFCO, Inc.,*
51 F. Supp. 3d 249 (E.D.N.Y. 2014) ………………………………………….. 7

*Westbury Small Bus. Corp. v. Ballarine,*
128 Misc. 2d 469 (Sup Ct., Nassau Co. 1985)………………………………… 16

*Zhirzhan v AGL Indus.,*
2015 U.S. Dist. LEXIS 194379 (E.D.N.Y. 2015)……………………………….. 14

## STATUTES AND REGULATIONS

N.Y. GBL § 349

N.Y. GBL § 350

N.Y. GBL § 680

N.Y. GBL § 681

N.Y. GBL § 683

N.Y. GBL § 687

N.Y. GBL § 690

N.Y. GBL § 695

11 U.S.C. § 523

15 U.S.C § 1125

13 NYCRR 200

Defendants Tampa Bay Marine Recovery, Inc. ("TBMR"), Erich A. Jaeger ("E. Jaeger") and Abigail Jaeger ("A. Jaeger") (collectively the "Jaeger Defendants"), by and through their undersigned attorneys, and *in lieu* of an Answer to Plaintiff Sea Tow Services Intentional, Inc.'s ("Plaintiff's," "Sea Tow's," or "STSI's") Second Amended and Supplemental Complaint, dated 9/10/21 (Dkt. No. 140) (the "SASC"),[1] hereby submit this Memorandum of Law ("MOL") in support of their Motion to Dismiss Counts I, II, III, IV, V, VII, and VIII of the Complaint under Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief can be granted).

## I.     PRELIMINARY STATEMENT

Mr. and Ms. Jaeger are a licensed sea captain and his wife. Together, through their company (TBMR), they operated a small maritime towing and salvage business. Pursuant to a 11/11/19 "Management Agreement" ("MA"), TBMR and E. Jaeger contracted with Sea Tow to take over, operate, and manage the Sea Tow Tampa Bay franchised territory, effectively becoming franchisees themselves. However, after the Jaeger Defendants complied with a request by a federal bankruptcy trustee for information concerning the prior franchisee's finances, Sea Tow used that as an excuse (claiming it breached confidentiality provisions) to terminate the Jaeger Defendants' MA, and commenced this action against them.  Sea Tow is suing the Jaeger Defendants for *inter alia* fraud, breach of contract (both under the MA, and the FA, which the Jaegers are not even parties to), Lanham Act violations, and a host of other meritless claims.   After multiple amendments of its pleadings, Sea Tow has failed to properly allege viable causes of action.

Additionally, aside from the failure to plead viable causes of action, and as a backdrop to this entire dispute, the MA is, in fact, a franchise agreement (regardless of what Sea Tow may

---

[1]     Plaintiff filed the SASC twice on the docket at both Dkt. 140 and 141.  The Jaeger Defendants are treating the first filing as the operative pleading and assume the second filing was an error.  Alternatively, since no leave was granted by the Court for the assertion of the second pleadings, it should be dismissed outright or treated as a nullity.

entitle it).[2]  Franchising is a regulated industry in NY, and prior to selling the Jaegers this franchise, Sea Tow was required to register a prospectus (including the FA and any ancillary agreements) with the NY Attorney General's Office, and once accepted and approved by the AG's Office, then properly "disclose" it to the Jaeger Defendants, pursuant to the New York Franchise Sales Act, NY GBL 680 *et seq.* (the "NYFSA").  Astonishingly, Sea Tow has made repeated admissions, leading to the conclusion it has been violating the NYFSA for years.  As this case has progressed, Sea Tow admitted that they are indeed a franchise, but for the relevant times for this dispute, they never registered their franchise with the NY AG's Office as required under NY GBL 683. Without going through that process, the Jaegers were never properly disclosed with critical information concerning the MA's terms, and Sea Tow was prohibited from illegally selling the MA to the Jaegers.  As a matter of public policy, Sea Tow should be prohibited from attempting to sue on the basis of this illegal contract, particularly regarding the very same provisions it was required by the NYFSA to specifically identify and "disclose" in a prospectus, which it never did.

Further, in many critical instances, the contracts themselves refute Sea Tow's own allegations (which is probably why Sea Tow seeks to keep the contracts under seal, and does not attach them to their pleadings). For example, in the SASC, Sea Tow alleges that it properly terminated the Jaegers' franchise for producing requested financial information to TBMT's federal bankruptcy trustee, and brings a host of claims on that basis.  Sea Tow neglects to mention that pursuant to the MA itself, the Jaegers also had the right, in their sole discretion, to share that information freely with the former franchisee, and therefore by extension, *the Chp. 11, Subchapter 5, trustee who was in control of it during the bankruptcy* (MA ¶1; 1(b)).  The actual contract shows

---

[2]      For the purposes of this motion, the Jaeger Defendants will use the term "Management Agreement" or "MA," but maintain that this is a franchise agreement as defined under the NYFSA; NYGBL 681 (definitions).

that the basis for Sea Tow's wrongful termination of the Jaegers' franchise is without merit.  Sea Tow's case is a punitive over-reach, and there is nothing of substance beyond bald allegations.

The Jaeger Defendants therefore seek dismissal with prejudice of Plaintiff's 1st, 2nd, 3rd, 4th, 5th, 7th, & 8th COAs, that such dismissal be considered for "prevailing party" fee and cost shifting (see MA ¶6), and for all such relief as may be just and equitable under the circumstances.

## II.      FACTUAL ALLEGATIONS AND PLEADINGS

As alleged by Plaintiff (Dkt. 140), the Jaeger Defendants were operating ("managing") a franchised business for Sea Tow in Tampa Bay, FL. This territory had been previously franchised (under the 4/23/15 Franchise Agreement, or "FA") by Sea Tow co-defendants Kathleen and Raul Moreno, and their entity TBMT (the "Moreno Defendants") (SASC ¶ 32). Sea Tow alleges that the FA terminated automatically on 5/11/19 as a result of a default by TBMT (*Id.* ¶¶4, 65), as confirmed in a certain Termination and Relinquishment Agreement, dated 10/31/19 ("TARA"). (*0* ¶ 67). On 11/11/2019, Plaintiff and TBMR entered into the Management Agreement ("MA") to provide services to Sea Tow's members in the Tampa Bay area (Id. ¶ 73).

Sea Tow generally alleges that the Jaegers engaged in "fraudulent" conduct, and conspired to defraud Sea Tow.  It alleges a "fraudulent scheme" to direct TBMT to file bankruptcy, so as to reinstate the Morenos' terminated franchise agreement (*see* ¶¶8, 140), and also to persuade Sea Tow not to sell the Sea Tow Tampa Bay franchise on the open market, and to instead appoint E. Jaeger and TBMR as manager of the franchise (*Id.* ¶139).  The pleading fails to allege with any specificity what the Jaegers actually did in furtherance of any alleged "fraudulent" scheme.

Sea Tow further alleges that TBMT filed for Chapter 11 bankruptcy protection on or about 2/19/20 (SASC ¶87), and that "[w]ithout STSI's knowledge or consent," A. Jaeger allegedly provided "confidential financial information" for TBMR to TBMT's bankruptcy trustee and

attorney (Id. ¶¶95-96). E. Jaeger and TBMR then supposedly refused repeated requests by Plaintiff for a list of the disclosed confidential documents, and stopped communicating with Plaintiff (Id. ¶¶104-105). Unilaterally deeming this to be a breach of the MA and FA (which Sea Tow incorrectly claims was incorporated into the MA), Sea Tow terminated the MA on June 26, 2020 (Id. ¶106). E. Jaeger and TBMR then allegedly breached post-termination obligations set forth in the FA by failing to de-identify, continuing to use and disclose STSI's confidential information, and failing to return pro rata membership fees to Plaintiff. (Id. ¶107).

*In re Tampa Bay Marine Towing & Services, Inc.*, Case No. 8:20-bk-01418-CED (USBC, MDFL, Tampa Div., Chp. 11) (TMBT's bankruptcy filing) (the "Bankruptcy Case"), referenced in *inter alia* Par. 87 of the SASC, was dismissed by the Hon. Carly E. Delano, by Order dated 12/4/20. *See id.*, Dkt. No. 155 (dismissing bankruptcy). The Jaegers respectfully request that the Court take judicial notice that, from the bankruptcy docket available on PACER, the grounds for dismissal were not for a "fraudulent" bankruptcy filing or petition (e.g. not under 11 U.S.C. 523(2)(A) for "false pretenses, a false representation, or actual fraud…"); nor was any such relief sought by Sea Tow. Sea Tow was very active in litigating within the bankruptcy, and if the filing was "fraudulent," their presumptive remedy was to move that Bankruptcy Court for relief under the bankruptcy code (*e.g.* under 11 U.S.C. 523). Plaintiff did not even raise that as an issue (within the forum empowered to address such allegations), and therefore should be collaterally estopped, or judicially estopped, from raising civil allegations herein.

Sea Tow alleges that TBMR was required under the MA to operate as manager of Sea Tow Tampa Bay "under the structure of" the FA (SASC ¶77), and that according to the MA, the Manager purportedly owed a fiduciary duty to STSI (Id. ¶79). What is tellingly absent from Plaintiff's allegations are key provisions from the MA that undermine Plaintiff's position. The

MA provides that the Jaeger Defendants must operate "under" the terms of, and "in conformity" with the 2015 FA, but significantly, the MA never once "incorporates by reference" or otherwise adopts the obligations of the FA.  Rather, the actual contracts are clear that the MA controls. TBMR has "complete and autonomous control over all aspects of the business," allowing them to operate in their "sole discretion."  MA ¶1.  This critical fact is absent from Plaintiff's allegations

Significantly, the MA provides that the Jaeger Defendants were free to ***share information*** (including any "confidential" information) with the Morenos and their entity (or, logically, the estate of the Morenos' entity within the bankruptcy). *See* MA ¶1(b) ("It is understood from this broad delegation…that Manager shall report solely to STSI, **with the right**, but not the duty to provide information to, and receive information from TMBT [the Morenos]…Manager may discuss or not, disclose or not, and receive or not, information from or to it, as Manager deems fit, subject to STSI's oversight…").  Therefore, contrary to Plaintiff's allegations, the MA specifically provides that the Jaeger Defendants, in their "sole discretion," had the "right" to share information freely with the Moreno Defendants (*including their lawyer*), and their entity (*including a trustee if that entity was in a bankruptcy proceeding*).  This right to share information is not mentioned <u>once</u> in Plaintiff's allegations, and is fatal to Sea Tow's only rationale for terminating the MA.

Similarly, Sea Tow's allegations regarding funds that were allegedly held in trust are contradicted by the actual contract. The MA does <u>not</u> entitle Sea Tow to any funds that are purportedly required to be held in "trust." The very provisions that Plaintiff cites to (but does not quote in its pleadings or attach), are just not applicable to the Jaeger Defendants who are under the MA, not the FA, and the MA's terms flatly contradict Plaintiffs' allegations. MA §1(d) requires that the Manager "pay over to STSI 15% of the gross revenue of STTB [i.e. Sea Tow Tampa Bay], together with the rest of its monthly reporting, per FA, article 8, §8.6....The amount thereupon

remaining shall be applied by Manager in accordance with the Business Plan he has provided, subject to Manager's best business judgment ..."  The MA, therefore, provides for an 85/15% allocation of all revenue, including membership fees earned each month, and does <u>not</u> treat membership fees differently than any other revenue.  It certainly does not designate it as "trust" money. Per MA §1(d), Manager also has discretion to use the business' revenues (including membership fees) in accordance with its best business judgment. The MA is self-operative and supersedes the FA (MA §6).  Even assuming *arguendo* the FA controls, *the FA does not say what Plaintiff alleges it does*.  <u>Only</u> for certain instances where fees are collected by a franchisee, does the FA specifically require a portion be set aside (in trust) for Sea Tow's benefit, and that is not applicable to the Jaeger Defendants.  The contracts just do not say what Sea Tow alleges they do.

## III. LEGAL STANDARDS

### A.    FRCP 12(b)(6) Motion to Dismiss Standard

On a Rule 12(b)(6) motion to dismiss, "[t]he court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff." *N. Am. Olive Oil Assn. v D'Avolio Inc.*, 457 F. Supp. 3d 207, 219 (E.D.N.Y. 2020). "However, … [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" *Metro-Gem Leasing & Funding Corp. v. Dancy*, 2017 U.S. Dist. LEXIS 133379, at \*29 (E.D.N.Y. 2017).  At the motion to dismiss stage, a court may "take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *N. Am. Olive Oil Assn., supra at* 219. Further, "it is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss." *Porrazzo v Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011).

> An exception to the general rule allows a court to also consider documents 'integral' to the complaint.  The Second Circuit instructs that a document is 'integral to the

complaint where the complaint relies heavily upon its terms and effect.... In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.

*N. Am. Olive Oil Assn., supra* at 220. In the Declaration in Support by Erich A. Jaeger, true and correct copies of the FA (Ex. 1) and MA (Ex. 2) are annexed. Such documents may be considered at the motion to dismiss stage as they are integral to or incorporated by reference in the Complaint, and the Jaegers are entitled to show that Sea Tow's allegations are in conflict with the contracts.

## IV.   LEGAL ARGUMENTS FOR DISMISSAL

### A.   Plaintiff's Count I Claim for Fraud and Conspiracy

The Count I fraud claims against all Defendants are insufficient as a matter of law.

Under New York law, a claim of fraud consists of five elements: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff.

*United Mdse. Wholesale, Inc. v IFFCO, Inc.*, 51 F. Supp. 3d 249, 267 (E.D.N.Y. 2014).

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FRCP §9(b). "[T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.

*GWG MCA Capital, Inc. v. Nulook Capital, LLC*, 2019 U.S. Dist. LEXIS 36983, at *10 (E.D.N.Y. 2019). "[T]he pleading must identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed." *EMA Fin., LLC v. Joey NY, Inc.*, 2019 U.S. Dist. LEXIS 161454, at *20 (S.D.N.Y. 2019). In addition, "group pleadings" are generally insufficient in a fraud context. "[T]he complaint must clearly state which defendants made which

statements." *Hatteras Enters. V. Forsythe Cosmetic Group, Ltd.*, 2018 U.S. Dist. LEXIS 68792, at *31 (E.D.N.Y. 2018).  Sea Tow's allegations are threadbare at best.

Sea Tow's allegations do not meet the FRCP §9(b) heightened pleading standard for fraud. Sea Tow fails to allege with particularity "the time, place, speaker, and content of the alleged misrepresentations; how the misrepresentations were fraudulent; and the details that give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Schwartzco Enters. LLC v TMH Mgt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014).  Plaintiff instead only generally alleges: "[d]efendants willfully induced Sea Tow by their representations, misrepresentations and omissions to enter into the Management Agreement instead of selling the Sea Tow Tampa Bay franchise on the open market." (SASC ¶143); "Defendants" committed fraud by *inter alia* signing the MA with no "intention of living up to the terms" of the contract (Id. ¶138); and Defendants engaged in a fraudulent bankruptcy filing (Id. ¶8); and as a result, Plaintiff was damaged. (Id. ¶144).[3]  Plaintiff attributes misstatements to "Defendants" without specifying which defendant made which statement, and with no specific factual allegations. *See* SASC ¶¶ 131, 138, 140-141, 143, 144. This vague group pleading does not put the Jaeger Defendants on notice of the specific claims being made against each of them.[4]

Plaintiff further alleges that "Defendants" committed fraud by *inter alia* signing the MA with no "intention of living up to the terms" of the contract (SASC ¶ 138), but that is duplicative of the breach of contract claims, and cannot withstand a motion to dismiss.

Where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the

---

[3]     The allegations set forth in ¶¶ 132-137 of the Complaint are made only against TBMT and the Morenos.

[4]     The allegation that Defendants made unspecified fraudulent omissions (SASC ¶ 143) must fail because Plaintiff fails to plead that the Jaeger Defendants owed a duty to disclose the omitted information prior to signing the MA. *See United Mdse. Wholesale, Inc. v IFFCO, Inc.*, 51 F. Supp. 3d 249, 267 (E.D.N.Y. 2014).

precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.

*Telecom Intl. Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir 2001).

Sea Tow's allegations of fraud and conspiracy "directing TMBT to file a bankruptcy case in order to attempt to reinstate the terminated franchise agreement" (SASC ¶¶8, 140) must similarly be dismissed.  Sea Tow only makes conclusory allegations of a conspiracy, which are insufficient. It fails to specify which of the "defendants" were conspiring (*see, e.g.*, SASC ¶140), fails to allege a corrupt agreement or unlawful objective, and fails to allege any "overt act" that the Jaeger Defendants committed in furtherance of the "corrupt agreement" (the petition was filed by TBMT, and not by or with the Jaeger Defendants).  The allegations appear to be that the Jaegers participated in a "scheme" to "wrongfully use the judicial system" in some unspecified way so the Moreno defendants could file for bankruptcy.  These allegations are just too vague to survive.

> "To plead a valid cause of action for conspiracy, a plaintiff in New York must allege the primary tort and four elements: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the agreement; (c) the parties' intentional participation in the furtherance of a plan or purpose; and (d) the resulting damage or injury."

*Stutts v. De Dietrich Group*, 2006 U.S. Dist. LEXIS 47638, at *55 (E.D.N.Y. 2006). "Conspiracy claims premised upon 'conclusory, vague or general' allegations will not withstand a motion to dismiss." *Id.* at *55-56. *See also Bigio v Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir .2012).  Plaintiff alleges a conspiracy to file for bankruptcy protection. Yet, filing for bankruptcy is lawful and a statutory right, and therefore, TMBT's bankruptcy filing cannot be the basis of a fraud or conspiracy to defraud claim, as it is not "an unlawful objective." *See Kramer v Pollock-Krasner Found.*, 890 F. Supp. 250, 255 (S.D.N.Y. 1995).  Further, filing a bankruptcy petition is protected by the litigation privilege doctrine, which is an affirmative defense, and can also be a basis for dismissal. *See e.g. Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004).

Finally, Plaintiff has failed to allege any damages as a result of the bankruptcy filing (the bankruptcy court did not, in fact, "reinstate" the FA back to TBMT). On the contrary, this Court should take judicial notice of the fact that TBMT's Bankruptcy Case was dismissed on 12/7/20 (*see* Case No. 8:20-bk-01418-CED (USBC, MD FL), Order, Dkt. No. 155). The valuable asset, the "territory" was recaptured by Sea Tow, and the automatic bankruptcy stay also limits any damages. Plaintiff's other claim for damages, that it lost the opportunity to sell the Sea Tow Tampa Bay franchise on the open market (SASC ¶141), also cannot be the basis for a recovery of damages. "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996) (applying the out-of-pocket rule).

### B.   Plaintiff's Trademark Infringement and Dilution Claims Against TBMR and E. Jaeger for a Permanent Injunction (Count II) and for Damages (Count III)

Plaintiff's claims under the Lanham Act (Counts II-III)[5] "consist of conclusory allegations unsupported by factual assertions" and should be dismissed. *See Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006). To sufficiently allege a trademark infringement claim under the Lanham Act, "a plaintiff must establish that (1) the plaintiff has a valid trademark that is entitled to protection under the Lanham Act; (2) the defendant used the trademark in commerce without the plaintiff's consent; and (3) there was likelihood of consumer confusion due to the defendant's use of the trademark." *Pub. Free Will Corp. v Verizon Communs. Inc.*, 2017 U.S. Dist. LEXIS 39168, at *6-7 (E.D.N.Y. 2017).

"To prevail under the first prong of the test, a plaintiff must show both 'prior use and ownership.'" *Ahmed v GEO USA LLC*, 2015 U.S. Dist. LEXIS 39679, at *7 (SDNY 2015). In the

---

[5]      Plaintiff asserts its Lanham Act claims under 15 U.S.C. § 1115 (see SASC ¶157), which appears to be an error. The SASC, therefore, does not give sufficient notice to Defendants as to whether Plaintiff's claims are being brought pursuant to §1114(a) or §1125(a). For this motion, we assume the claims are being made pursuant to §1125.

instant case, Plaintiff baldly alleges that it owns some twenty-one "famous Sea Tow Trademarks" and "the distinctive yellow and yellow and black trade dress." (SASC ¶148). There is no allegation of prior use and no indication whether or not such purported ownership is through registration of the marks. As such, Plaintiff does not sufficiently allege "a valid mark entitled to protection." Notably, according to the USPTO, 12 of these marks are not validly registered.[6]  More critically, Plaintiff fails to sufficiently allege the second prong, the "nature of the [defendant's] use." *See Dow Jones & Co., Inc.*, 451 F.3d at 307.  Plaintiff does not specify which of the 20-plus "Sea Tow Trademarks" the Jaeger Defendants allegedly used (with some of them apparently not actually owned by Sea Tow), nor how, in violation of Sea Tow's rights, they allegedly used them in commerce (there are no specific factual allegations of use). *See* SASC ¶149, 153, and *generally*.

As to the last prong, consumer confusion, Sea Tow again fails to provide any specific allegation, or explain how there could possibly even be any. Sea Tow's business model is much like the American Automobile Association, customers buy membership cards, and then use those cards when they get into trouble on the water to call for the membership towing services they have pre-paid for. *See* SASC ¶36; Stein Declaration, Dkt. 85-1, ¶4 (pre-paid towing membership cards used). Sea Tow Members call Sea Tow's general number, with their already paid-for Sea Tow membership ID card, entitling them to be towed. *Id*. Sea Tow fails to allege how the Jaegers did (or even could) confuse customers, or divert them to their business. Mere conclusory restatements of the elements in the pleadings are insufficient, especially since Sea Tow's membership-based

---

[6]       The following marks are listed as "dead" by the USPTO: Sea\\Security; Sea Smart, Trailer Care, Lifelines, Enviro Care.  The marks identified in SASC ¶ 126(n-q), (s-u) were never even registered. A true and correct printout of the USPTO records for Sea Tow's "dead" marks is annexed hereto as composite Ex. "A". *See N. Am. Olive Oil Assn. v D'Avolio Inc*., 457 F. Supp. 3d 207, 220 (E.D.N.Y. 2020) (courts may take judicial notice of trademark registration records on a motion to dismiss). Sea Tow's counsel was under a duty to investigate under FRCP 11, and should have learned it had no rights for 12 of these marks, and removed any claims associated with those marks.  With no specific allegations, it is unclear what allegations are linked to what marks, so Plaintiff's pleadings may reference dead, cancelled, or unregistered marks.

business (as described by Sea Tow) makes it impossible for the Jaegers to confuse and compete for customers, at least without some alleged additional act (and there is none alleged).

Plaintiff's infringement claim for trade dress (the yellow and yellow and black color scheme) must also fail. To establish trade dress infringement, a plaintiff must allege that "(1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's good and the defendant's." *Carson Opt., Inc. v Prym Consumer USA, Inc.*, 11 F Supp 3d 317, 339 (EDNY 2014). Plaintiff does not assert any allegations regarding the first two prongs. The color yellow (particularly on the water) is hardly distinctive, and it is Sea Tow's burden to meet the threshold allegations, yet it is silent in its pleadings. Moreover, this Court should take judicial notice that Sea Tow's registration of the yellow color mark on sea vessels pursuant to its acquired distinctiveness (Registration No. 3678375) *was cancelled by the USPTO* as a sanction for Sea Tow's failure to produce responsive documents regarding *inter alia* the functionality (i.e. visibility) of the color yellow, in a case where Sea Tow had the audacity to litigate against a volunteer fire dept. for using the color yellow on its boats in *Smith Mountain Lake Marine Volunteer Fire/Rescue Department, Inc. v. Sea Tow Services International, Inc*., Cancellation No. 92059856. A true and correct copy of the USPTO's order and cancellation is annexed as composite Ex. "B". As to the third prong, Plaintiff only alleges in conclusory fashion that there is a likelihood of confusion, but offers no factual allegations.

Sea Tow's trademark dilution claim is similarly insufficiently pled. For a trademark dilution claim, "a plaintiff must prove that (1) its mark is famous and distinctive, (2) its mark is used in commerce by the defendant, and (3) the defendant's use is likely to cause dilution through either 'blurring' or 'tarnishment'." *Boarding Sch. Review, LLC v Delta Career Educ. Corp.*, 2013 U.S. Dist. LEXIS 48513, at *20 (SDNY 2013). Plaintiff has failed to sufficiently allege each of

these three prongs.  Sea Tow does not allege that its marks are "almost universally recognized by the general public," nor does it sufficiently allege that the marks' fame is in the general marketplace (as opposed to just in a niche market).  *Boarding Sch. Review, LLC v Delta Career Educ. Corp.*, 2013 U.S. Dist. LEXIS 48513, at *20 (SDNY 2013). These pleadings are insufficient.

To obtain a permanent injunction, plaintiff (a) must succeed on the merits of its trademark infringement claim and (b) "demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Kohler Co. v Bold Intl. FZCO*, 422 F. Supp. 3d 681, 736 (EDNY 2018).  Here, Sea Tow's Count II claim for a permanent injunction must fail since it does not allege sufficient underlying Lanham Act claims (*see supra*). A permanent injunction is also inappropriate here since Plaintiff fails to adequately allege that the Jaeger Defendants are currently using Sea Tow's marks. *See* SASC ¶149 (acknowledging they are not); *but see* ¶155 (speculating they might be, without any factual allegations in support). So, there is no immediate irreparable harm that warrants a permanent injunction. *See ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *Goddard Sys. v Gondal*, 2018 US Dist LEXIS 52945, at *76 (D. Del. 2018). Further, a permanent injunction is improper here where there are remedies available at law (including damages).

The Lanham Act claims against Mr. Jaeger, individually, must be dismissed since there is no allegation that he was "a moving, active conscious force" behind TBMR's alleged infringement. *Procter & Gamble Co. v. Quality King Distrib., Inc*., 123 F. Supp. 2d 108, 117 (E.D.N.Y. 2000).

### C.   Plaintiff's Breach of Contract Claims (Counts IV and V)

"To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show: (1) the existence of an agreement, (2) adequate

13

performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages." *Giugliano v. FS2 Capital Partners, LLC*, 2015 U.S. Dist. LEXIS 118679, at *25 (E.D.N.Y. 2015). Conclusory allegations of a breach are insufficient to support a breach of contract claim. *Id.* at *27. *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (collecting cases). "…[T]o plead the existence of an agreement, a complaint must allege the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Metro-Gem Leasing & Funding Corp. v. Dancy*, 2017 U.S. Dist. LEXIS 133379, at *36 (E.D.N.Y. 2017). "A complaint fails to sufficiently plead the existence of a contract if it does not provide factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms." *Childers v. NY & Presbyt. Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014). The terms of the agreement upon which liability is predicated must be set forth in the complaint either "by express reference or by attaching a copy of the contract." *Zhirzhan v. AGL Indus.*, 2015 U.S. Dist. LEXIS 194379, at *47 (E.D.N.Y. 2015).

Plaintiff's allegations fail to state a claim, as the operative agreement binding the Jaeger Defendants, the MA (and any ancillary agreements), is not attached, nor is the FA. Further, an examination of the pleadings shows that Plaintiff has failed to adequately allege in each instance of purported breach, (1) the parties to each contract, (2) the contractual provision being breached, and (3) how it was breached. Without the contracts being annexed, the insufficiency of the allegations is a fatal defect. Further, where specific allegations regarding the contracts are contradicted by the contracts themselves, the pleading is similarly fatally flawed.

1. **As A Matter Of Public Policy, The MA, And Other Ancillary Contracts, Are Illegal Contracts And Therefore Void And Unenforceable**

Franchising is a regulated industry, and the provisions Sea Tow seeks to enforce are within a franchise contract that was procured illegally, in violation of the remedial and liberally construed

NYFSA. NY's public policy concerns therefore prohibit enforcement of these contracts against the Jaegers. The provisions themselves (such as financial obligations, confidentiality requirements, and disfavored post-term restrictive covenants) are required by statute (and rule and regulation) to be specifically highlighted, and identified separately in a prospectus, which was required to be reviewed, and approved, by the NY AG's Office, <u>then</u> properly disclosed in an approved prospectus.  All this had to occur <u>prior</u> to Sea Tow being able to even enter into a contract with the Jaegers.  The NY legislature adopted the NYFSA as a public policy statute to protect franchisees, so that they could be aware of, and protected from, such one-sided provisions:

> 1…New York residents have suffered substantial losses where the franchisor or his representative has not provided full and complete information regarding the franchisor-franchisee relationship, the details of the contract between the franchisor and franchisee, … and other factors relevant to the franchise offered for sale.

> 2.   It is hereby determined and declared that the offer and sale of franchises, as defined in this article, is a matter affected with a public interest and subject to the supervision of the state, for the purpose of providing prospective franchisees and potential franchise investors with material details of the franchise offering so that they may participate in the franchise system in a manner that may avoid detriment to the public interest and benefit the commerce and industry of the state...

N.Y. GBL §680 (in relevant part). "The Franchise Sales Act serves legitimate state interests. As stated in the legislative findings, New York has a valid interest in protecting prospective franchisees from unscrupulous franchisors." *Mon-Shore Mgt., Inc. v Family Media, Inc.*, 584 F Supp 186, 191 (SDNY 1984).  Further, the act is remedial in nature, and must be liberally construed to protect franchisees. *See* NY GBL §695(2) ("This article shall be liberally construed to effect the purposes thereof"); *A.J. Temple Marble & Tile v Union Carbide Marble Care*, 162 Misc. 2d 941, 951 (Sup. Ct., N.Y. Co. 1994). *See also Schwartzco Enters. LLC v TMH Mgt., LLC*, 60 F Supp 3d 331, 356 (EDNY 2014).  The Court should liberally construe the NYFSA to prevent Sea Tow from undermining NY's stated public policy objectives in these circumstances.  Further, given the

inherent imbalance of power in the franchise relationship, franchise agreements are considered to be contracts of adhesion, and any ambiguities should be construed against the franchisor. *Westbury Small Bus. Corp. v. Ballarine*, 128 Misc. 2d 469, 477-78, *n*.4 (Sup Ct., Nassau Co. 1985). *See, e.g., A.P. Moller-Maersk A/S v Ocean Express Miami*, 590 F Supp 2d 526, 532 (SDNY 2008). The Court should construe any contractual provisions (particularly since this contract is illegal under the NYFSA, see below) against Sea Tow, and in favor of the Jaeger Defendants.

In this case, it is established that Sea Tow is a "franchisor," and subject to the requirements of the NYFSA. Sea Tow itself has repeatedly represented to this Court that it is a franchise, and is now judicially estopped from arguing the opposite. *See* 4/20/21 Memorandum and Order, Dkt. 123, pp. 13-14 (Judge Locke's finding that Plaintiff is judicially estopped from now claiming it is not a franchise) (citing Plaintiff's own MOL, Dkt. 82-1, pg. 8 where STSI represents itself as, "for the last two decades, [a] franchisor of the famous 'Sea Tow' trademarks"). *See also* Frohnhoefer Decl., Dkt. 82-2, ¶¶4-5.  Plaintiff's status as a "franchisor" is also law of the case since Judge Locke independently found Sea Tow to be a franchise under NYGBL § 681(3). *See* Dkt. 123, pp. 14-15. Therefore, Sea Tow should be considered a "franchisor" for the purposes of this motion.

Likewise, STSI's own filings have admitted to a failure to register its FDD with the NYS AG's office during the relevant period.  That is a fact that Plaintiff has admitted to the Court multiple times and is a matter of public record. *See* Stein Declaration, Dkt. 85-1, pg. 7 ("In years past, as indicated above, Sea Tow voluntarily "opted in" to the NYFSA by registering with the State of New York under the statute, but no longer does so."); Stein Supplemental Reply Declaration, Dkt. 88-1, pg. 3-4 ("since 2010 and up to the present day, Sea Tow ceased voluntarily registering with the AG's office under the NYFSA because Sea Tow is and remains exempt from the NYFSA"). Plaintiff is likewise judicially estopped from now arguing that it was registered

during the relevant period.  This Court should take judicial notice of these filings, and consider Sea Tow to have failed to register (and properly disclose), when the MA was executed (in 2019).

The last piece of the puzzle, that the MA is an illegal franchise agreement, comes together from the terms of the MA itself.  The MA is a *de facto* franchise agreement since it meets both prongs required for a business to be considered a "franchise" under NYFSA 681(3).  It satisfies the first prong since it requires payment of a "franchise fee", which is broadly construed to include upfront payments and payments made in installments, or through periodic royalty payments. *See* 13 NYCRR 200.1(a). Specifically, the MA requires payment of 15% gross revenue to Sea Tow (MA §1(d)); and payment of $25,000 to Sea Tow as consideration for the costs incurred in preparing the MA (MA §6), each of which qualify as a "franchise fee" under the NYFSA.  Second, the MA provides a marketing plan or alternatively permits the franchisee to use Sea Tow's trademarks as part of the business (both are met). This is clear from MA §1(a), which provides that the "Manager" is entitled to all of the privileges pertaining to operations of the business that are provided for under the FA.  Pursuant to FA §2.1, the franchisee is granted a Sea Tow license and the right to use Sea Tow's Proprietary Properties, which includes Sea Tow's trademarks (see FA §1.1.7), in the operation of the Sea Tow Tampa Bay business. The MA itself is a franchise agreement, no matter what Sea Tow tried to call it, by definition.

Therefore, Sea Tow has admitted it is a franchisor, yet has not registered any prospectus with the NY AG's office (or had it approved), and therefore could not, and did not meet the registration and disclosure requirements of §683 (by Sea Tow's own admission). The MA's terms show the deal meets the definition of a franchise covered by the NYFSA.  As such it violated the NYFSA. This Court should recognize the MA as an illegal franchise agreement, which is void and unenforceable as a matter of law, and dismiss Sea Tow's contractual claims on that basis.

"Under both federal and New York state law, illegal agreements, as well as agreements contrary to public policy, have long been held to be unenforceable and void." *Ricatto v. M3 Innovations Unlimited, Inc*., 2019 US Dist. LEXIS 210777, at *30 (S.D.N.Y. 2019). *See also Schlessinger v. Valspar Corp.,* 686 F.3d 81, 85 (2d Cir. 2012). So too, where the franchisor has failed to register its FDD (and disclose it to the prospective franchisee), the franchise agreement (and its ancillary contracts) should be deemed illegal contracts and therefore void and unenforceable. *See King Computer, Inc. v Beeper Plus, Inc.*, 1993 US Dist. LEXIS 2707, at *1 (S.D.N.Y. 1993).[7] The NYFSA even imposes a criminal sanction for violations, *see* NY GBL §690, "thus further evincing a *strong public policy* against enforcement of unlicensed franchise agreements." *Id.* at *25 (emphasis added). On public policy grounds, therefore, the FA, MA, and NCNDAs (or at least certain of their provisions) should be deemed void and unenforceable.

If this Court declines to find the entire MA to be an illegal and void contract, the Court should, at least, deem particular contractual provisions, void as against the public policy of the NYFSA. The NYFSA (and its regulations) require that certain kinds of information and certain contractual provisions be identified in the prospectus, registered with the NY AG's Office and disclosed to the prospective franchisee prior to entry into contract. Importantly, Sea Tow is now suing on the very provisions it was specifically required to identify and separately "disclose" in an approved prospectus (but did not). As a matter of public policy, at least these provisions (as opposed to the whole contract) should not be enforced. Pursuant to 13 NYCRR 200.2, "Items 5-7" of an FDD must disclose, respectively, the initial franchise fee, other fees, and the initial

---

[7]     While one later NY state court decision states it is "unclear" whether a violation of the NYFSA affects the validity of a franchise agreement, we submit that this Court should follow *King Computer Inc.* and find that Plaintiff's failure to both register its FDD and disclose a properly registered FDD to the Jaeger Defendants renders the FA (or, at minimum, its specific violative provisions) illegal (and therefore void and unenforceable).

investment amount (which, if properly disclosed, should have included the $25,000 fee assessed under MA ¶6 and related Promissory Note); "Item 9" must disclose "the principal obligations of the franchisee under the franchise *and other agreements* after the signing of its agreement" (emphasis added) (which, if properly disclosed, would have included payment obligations under the Promissory Note) and must include both "xxii. <u>Post-termination obligations</u>" and "xxiii. <u>non-competition covenants</u>" (which, if properly disclosed, should have included information regarding post-termination non-compete restrictions); and "Item 14" must disclose the general subject matter of the franchisor's claimed <u>confidential information and conditions for use</u> by the franchisee (which, if properly disclosed, should have included the terms requiring non-disclosure of confidential information). The Jaegers should have been afforded an approved prospectus warning them of the nature of the specific terms Sea Tow is now suing them to enforce.  Plaintiff failed to register its FDD, and did not (and could not), disclose an approved registered FDD to the Jaeger Defendants as required under the NYFSA.  Therefore, the Jaeger Defendants never received proper disclosure regarding the specific contractual terms of the contract, which, the legislature and AG's Office have determined are specifically required to be disclosed (evincing NY State's concern that these provisions in particular are material and subject to abuse).  Yet, Sea Tow is now seeking to enforce its (1) fees / promissory notes / financial obligations, (2) restrictive covenants, and (3) confidentiality provisions. These provisions in particular had to be disclosed, and therefore, as a matter of NY public policy, they should be deemed void and unenforceable under the law.

Further, on separate public policy grounds, the non-compete provisions in the FA and NCNDAs should be deemed void and, therefore, unenforceable due to the public policy against illegal restraints on trade (including restrictive covenants). "New York law views non-compete provisions with high disfavor and considers them against the benefit of the

commonwealth." *Lightbox Ventures, LLC v. 3rd Home Ltd.*, 2016 US Dist LEXIS 155822, at \*28 (S.D.N.Y. 2016). New York (unlike many other states) provides that "[c]ovenants not to compete should be strictly construed because of the powerful considerations of public policy which militate against sanctioning the loss of a [person's] livelihood." *Brown & Brown, Inc. v Johnson*, 25 NY3d 364, 370 (2015).  Under the seminal case, *BDO Seidman*, "[a] restraint is reasonable only if it: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. The violation of any prong renders the covenant invalid." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999). S*ee also Crye Precision LLC v Bennettsville Print.*, 755 F App'x 34, 36 (2d. Cir. 2018).

Here, the sweeping terms of the Jaegers' non-compete provisions (see SASC ¶45) purport to restrict the Jaegers from working in the marine towing and salvage industry for **three years** after termination of the FA, within the Sea Tow Tampa Bay AOR, within 50 miles of the AOR perimeter, and **within a radial distance of fifty (50) miles of the perimeter of any Sea Tow franchise wherever located.**  The non-compete provisions of the FA and NCNDAs fail all three prongs under *BDO Seidman* and are unreasonable as a matter of law.  The non-competes impose restrictions that are much greater than is required for the legitimate interest of the employer, especially since Sea Tow is a membership-based business and an independent captain's sea towing or salvage business targeted at boaters who are not Sea Tow members is not injurious to Sea Tow's business. The non-competes impose an undue hardship on the Jaegers since they deprive the Jaegers of the opportunity to make a livelihood in their chosen profession for an unreasonably long time.  New York courts have consistently found that restrictive covenants for 3 years (and even less) are an "unusually lengthy period" and unduly burdensome as a matter of law. *Primo Enter v. Bachner,* 148 A.D. 2d, 350, 352 (1st Dept. 1989). *See also Am Medica Communs. Group v*

*Kilgallen*, 90 F App'x 10 (2d. Cir. 2003) (2-year restrictive covenant was unreasonable.) The geographic scope of the non-compete, which is so broad that it includes large swaths of the Florida coastline and beyond, is similarly unreasonable and therefore, unenforceable. *See Maxon v Franklin Traffic Serv.*, 261 AD2d 830, 832 (4th Dept 1999 (non-compete within a 300-mile radius of any franchised office was deemed unenforceable); *Columbia Ribbon & Carbon Mfg. Co v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (1977) (2-year non-compete for any territory that the employee was assigned to within 24 months prior to termination was unenforceable).  If enforced, this provision is harmful to the public since there is a public policy against restraints on trade and it both prevents legitimate competition and limits the options of boaters who may be in distress and need the assistance of a trained sea captain.

### 2. Breach of Franchise Agreement (FA) Claims Under Count IV Must Fail Because the Jaeger Defendants are Not Parties to the FA

Count IV claims for breach of the FA must fail in their entirety, because there is no privity of contract between the Jaeger Defendants and Sea Tow under the FA.  Plaintiff does not allege (nor can it allege) that E. Jaeger, A. Jaeger, or TBMR are parties to the FA.  *See* SASC ¶32.  Sea Tow tries to end-around this defect when it falsely alleges that the FA was incorporated by reference into the MA (SASC ¶164).  Yet, the MA states only that "the Manager is operating and shall continue to operate under the FA and all of his conduct shall be in conformity therewith, with all rights, duties, remedies and privileges, as set forth therein" (MA §1(a)), but it *clearly does not incorporate all of the FA's terms by reference*. *See* Ex. 2 to Jaeger Decl., MA §1(a).  Even assuming arguendo the entire FA was somehow incorporated by reference into the MA, any breach of the FA's terms by the parties to the MA would still only constitute a breach of the **MA**.  Accordingly, all breach of the "FA" claims under Count IV must be dismissed.

**3.**      **Plaintiff's Breach of Contract Claim Against TBMR and E. Jaeger For Membership Fees Should Be Dismissed As they Are Contradicted by the Express Terms of Both the MA and FA**

Plaintiff alleges that TBMR and E. Jaeger breached the FA and the MA by (a) failing to return the pro rata portions of any membership fees received prior to and post-termination of the MA in breach of FA §17.11; (b) failing to pay 15% of the gross revenue due for May and June 2020 in breach of MA §1(d); (c) failing to pay Sea Tow the membership fees paid to TBMR before and/or after termination of the MA in breach of FA §5.8; (d) failing to deidentify and cease and desist from use of the Sea Tow marks post-termination in breach of FA §17.1 and MA §3; and (e) ceasing to communicate with Sea Tow. (SASC ¶ 164).[8]

Plaintiff's breach of contract claim for the "return" of $324,841.26 in pro rata membership fees based on FA §17.11 is flatly contradicted by the terms of the MA. The MA, which is the governing contract in the legal relationship between TBMR and E. Jaeger (together, "Manager"), on the one hand, and STSI, on the other, specifically provides the terms under which *Manager* would divide the revenue it generated from the Sea Tow Tampa Bay business with STSI.  The MA supersedes the FA (*see* MA §6).  By its terms, MA §1(d) requires that the Manager:

> pay over to STSI 15% of the gross revenue of STTB [i.e. Sea Tow Tampa Bay], together with the rest of its monthly reporting, per FA, article 8, §8.6....The amount thereupon remaining shall be applied by Manager in accordance with the Business Plan he has provided, subject to Manager's best business judgment (e.g., having a surplus for anticipated expenses during periods of limited income, or maintained for acquisition of large assets, like vehicles and such).

The MA, therefore, provides for an 85/15 allocation of all revenue, *including the membership fees earned each month*.  The MA does not treat membership fees differently than any other revenue,

---

[8]      Plaintiff seems to allege that the Jaeger Defendants also breached the implied covenant of good faith and fair dealing in each of its contracts (SASC ¶175).  However, Plaintiff pleads no specific factual allegations, and to the extent the claim is based on the same breach of contract claims alleged in Count IV, it must be dismissed as duplicative. *See Goldblatt v. Englander Communications, LLC*, 2007 U.S. Dist. LEXIS 4278, at *13 (S.D.N.Y. 2007).

and it certainly does not designate it as "trust" money.  Manager has discretion to use the business' revenues (including membership fees) in accordance with its best business judgment.

Even assuming arguendo that the FA somehow applies to the Jaegers with respect to the treatment and allocation of TBMR's earned membership fees, the express terms of the FA *also* flatly contradict Sea Tow's allegation. Sea Tow falsely claims that any membership fees it paid to Manager constitute "trust" money (SASC ¶37), and that any pro rata amounts remaining on the annual memberships as of the date of termination must be returned to STSI. However, FA §8.7 (concerning membership fee division) specifically provides that after the franchisor deducts its franchisor membership fee and RTF allocation, "[t]he remainder [i.e. the "Franchisee Membership Fee"] shall belong to the Franchisee." The FA only grants the franchisor a limited right to withhold membership fees as security, but, the membership fees *belong to the franchisee immediately upon disbursement* (FA §8.7). Sea Tow is wrong - it misleadingly claims that the membership fees are paid to the franchisee "in trust" (SASC ¶37), but all FA §8.7 says is that membership fee division under the FA "requires trust and honesty on the part of franchisees." Moreover, FA §16.2.19 clearly states that membership fees in the possession of a franchisee are <u>only</u> deemed to be "trust" money (that does not belong to the franchisee) if the franchisee obtained the funds "in a manner other than by payment by Franchisor to Franchisee."[9] The SASC does not allege that the Jaeger Defendants obtained the membership fees at issue from anyone other than the Franchisor. Therefore, the express terms of the contracts refute the allegations of breach of contract.

---

[9]     FA §17.11, which Plaintiff cites, cannot refer to the same membership fees referenced in FA §8.7, but rather to the small subset of franchisee fees directly received by franchisee from customers (for which the portion due to the franchisor must be held in trust when required).  FA §8.7 expressly states that the Franchisee Membership Fee "shall belong to franchisee" (emphasis added), and FA §17.11 provides that the pro rata portion of membership fees received by Franchisee is "trust money owned by Franchisor" and must be returned upon termination.  This is the only viable construction, and if ambiguous, that ambiguity would be construed against Sea Tow as the drafting party.  *Natl. Grid Corp. Servs., LLC v. Brand Energy Servs., LLC*, 2017 U.S. Dist. LEXIS 47875, at *17 (E.D.N.Y. 2017).

As to the breach of contract claim for "ceasing to communicate with Sea Tow", Plaintiff has failed to allege both the specific provisions of the contract upon which any such liability is predicated, and the damages it has allegedly suffered because of such non-communication. For these reasons, this breach of contract claim must be dismissed as well.

### 4. Plaintiff's Breach of Contract Claim (For Disclosure of Confidential Information to a Third Party) (Count IV) Should Be Dismissed

Plaintiff asserts in conclusory fashion that the Jaeger Defendants (and all Defendants) breached (i) the FA; and (ii) "the NCNDAs" by "disclosing confidential Sea Tow Know How to TBMT's bankruptcy trustee and bankruptcy counsel." (SASC ¶171). Fatal to this claim, is the fact that under the MA itself, the Jaeger Defendants had the absolute "right" to share information with TBMT. *See* MA ¶1(b). The alleged disclosure (purportedly a breach) was made to an attorney who represents TBMT, and the trustee representing TBMT (under the auspices of the bankruptcy court), both of whom **are TBMT for all intents and purposes**. The sharing of this information with TMBT was pursuant to a "right" specifically granted to the Jaeger Defendants under the MA.

Further, Plaintiff's conclusory claim that the Jaeger Defendants breached certain "Non-Disclosure Agreements" ("NCNDAs") (SASC ¶¶96, 171) fails to sufficiently allege the first element of a breach of contract claim, namely, the existence of a binding contract between the parties. The Complaint only alleges that E. and A. Jaeger (as employees of TBMT) executed certain NCNDAs "in connection with the Franchise Agreement" (SASC ¶43). As such, the claim as against TBM**R** (which is not alleged to be a party to the contract) must be immediately dismissed for lack of privity. Moreover, the SASC fails to allege sufficient details regarding the NCNDAs' formation, the date of formation, the parties to the contract (other than A. Jaeger and E. Jager) or any of its operative terms. As such, Plaintiff does not adequately plead the existence of a contract.

Plaintiff also fails to adequately allege the second element of "breach" of any NCNDA by the Jaeger Defendants.  Notably, the NCNDAs are alleged to have been executed "in connection with [TBMT's] Franchise Agreement", which was subsequently terminated (SASC ¶¶43, 65).  As alleged, the SASC nonsensically claims that E. Jaeger, A. Jaeger and TBMR violated NDAs that the Jaegers signed as TBMT's employees (not TBMR's) by disclosing **TBMR's** financial information to TBMT's bankruptcy trustee (who is standing in TBMT's shoes as trustee for the estate) and attorney (who is also to be considered TBMT).  TBMT's NDA is not violated by disclosure of TBMR's information. Alternatively, if the Jaegers disclosed TMBT's information to TMBT's attorney and trustee, they were disclosing TMBT's information *to TBMT itself*.

Plaintiff also fails to sufficiently allege a breach since the information that defendants allegedly disclosed is not "confidential" under the NCNDAs.  The SASC does not annex either the FA or the NCNDAs as exhibits, nor does it sufficiently support its allegations of breach by identifying those documents that are deemed "confidential" under the non-disclosure provisions of the FA and NCNDAs.  It merely states that the FA and NCNDAs each prohibit the disclosure of the franchisor's "Sea Tow Know How", which is defined to include *inter alia* STSI's "pricing and formulae and information from which pricing is derived." (SASC ¶40-41, 43).  The alleged breach of the non-disclosure provisions must fail since there is no allegation that the Jaeger Defendants disclosed "pricing and formulae and information from which pricing is derived." There is only a general, conclusory allegation that the Jaeger Defendants disclosed certain undefined "confidential Sea Tow Know How for the Sea Tow Tampa Bay franchise" (SASC ¶¶96, 171).  To the extent the alleged breach can be understood, it is based on the alleged wrongful disclosure of "financial information for the Sea Tow Tampa Bay franchise" to TBMT's bankruptcy

trustee and counsel (SASC ¶95).  Yet, the financial information for TBMR's Sea Tow Tampa Bay operations is not part of STSI's confidential "Sea Tow Know How", as alleged.

Finally, Plaintiff fails to sufficiently allege any "damage" or "harm" caused by the purported disclosure of TBMR's Sea Tow Tampa Bay financial information to TMBT's bankruptcy trustee and bankruptcy counsel, aside from Plaintiff's conclusory allegation that the disclosure has "created financial harm to Sea Tow" (SASC ¶174).   Importantly, as alleged, the financial information was disclosed to a bankruptcy trustee (who has his own fiduciary responsibilities); and there is no allegation that this information has been disseminated or shared with Sea Tow's competitors or any other third parties.   Indeed, it is the Jaeger Defendants' understanding that the Bankruptcy Court has provisionally sealed the subject allegedly confidential information (pending this Court's ruling on the issue). Therefore, there is no "harm".

5.  **Plaintiff's Breach of Contract Claim (For Breach of FA's Non-Disclosure Provisions) Should Be Dismissed**

Plaintiff has also asserted claims against each of the Jaeger Defendants for breach of the FA's non-disclosure provisions.  As an initial matter, A. Jaeger cannot be personally liable for any breach of the FA since she is not a party to either the FA or the MA. *See Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 109 (1st Dept. 2002).  Moreover, this claim must be dismissed as against E. Jaeger since he is not a party to the FA and since, as discussed *supra*, the FA's terms were not incorporated by reference into the MA.

Again, Plaintiff's claim that the Jaeger Defendants breached the FA's non-disclosure provisions fails for the same reasons its claim for breach of the NDAs must fail.  As alleged, "Sea Tow Know How" is ill-defined, but to the extent it can be understood, it does not include the

financial data for TBMR's operations that was purportedly supplied to TBMT's bankruptcy trustee and counsel. Plaintiff again fails to sufficiently allege that it was damaged by the disclosure.[10]

To the extent Plaintiff is trying to allege that the Jaeger Defendants breached the non-disclosure provisions of the FA and/or NCNDAs by disclosing the franchisor's confidential "pricing and formulae and information from which pricing is derived" (SASC ¶41), the claim is also unavailing since that very same pricing information, including franchise royalty payments and other remuneration a franchisee must pay to a franchisor, *must be disclosed under the NYFSA*. *See* NY GBL 683(2) (h), (i), (k), (m) (detailing financial terms and arrangements to be disclosed); Item 6 (15 NYCRR 200.2) (same). If Sea Tow is to be in the business of selling franchises out of New York, it must file a prospectus (FDD) containing the financial terms of a franchisor-franchisee relationship - with the AG's office (which is then publicly available, and subject to FOIL), and additionally *disclose* it to a prospective franchisee [including, any purported "confidentiality agreement's terms"]. *See* NY GBL 683(8)(b). This cannot be private, and any contract provision that purports to maintain such information as "confidential" is void as a matter of public policy.

### 6. Plaintiff's Breach of Contract Claim (For Breach of Non-Compete Agreements) Should Be Dismissed

In the SASC (¶¶112, 168), Plaintiff baldly claims that the Jaeger Defendants breached their post-termination non-compete agreements. The bare-bones, conclusory allegation is made "upon information and belief" and without a scintilla of factual allegations to support the claim. Plaintiff even hedges in the allegations as to whether the Jaeger Defendants actually "performed" or were

---

[10] Plaintiff further alleges that TMBR and E. Jaeger breached the fiduciary duty it owed to STSI under the MA (SASC ¶¶79, 166-67). This argument must fail since Plaintiff cannot purport to create a "fiduciary duty" by contract where the facts and nature of the business relationship belie any claim of a fiduciary relationship. *See McDonald v. Elkholy*, 2017 U.S. Dist. LEXIS 119030, *15-16 (EDNY 2017) (the two essential elements of a fiduciary relationship are 'de *facto* control and dominance' by one party over the other within the relationship").

merely "seeking to perform" marine salvage work in violation of the NCNDAs. *See* SASC ¶112. This SASC claim is so bereft of factual allegations that it resorts to calling the Jaeger Defendants' "**intention** to violate their non-compete agreements" a breach of contract (*Id.* ¶3) and only goes so far as to claim that the Jaeger Defendants "**appear** to have violated their non-compete agreement with Sea Tow...." (*Id.* ¶12). Such speculative allegations cannot survive a motion to dismiss.

Plaintiff's claim that it was damaged because it lost the opportunity to sell the Sea Tow Tampa Bay business to another buyer as a result of the Jaeger Defendants' alleged breaches is not supported under the law. First, that lost opportunity relates to pre-contract representations that allegedly induced Plaintiff to enter into the MA in the first place and not to any alleged breach of contract. Second, damages for breach of contract are limited to damages sufficient for the aggrieved contracting party "to be placed in in the position it would have occupied had the contract been fulfilled according to its terms." *Mu Qing Hsi v. Wen Qing Chen*, 2018 U.S. Dist. LEXIS 197156, at *16 (E.D.N.Y. 2018). Currently, Sea Tow is in possession of the territory, having seized it when it wrongfully terminated the Jaeger Defendants' agreement, and Sea Tow has the full ability to sell it, or do with it as it sees fit. Plaintiff's Count IV claims should be dismissed insofar as they seek damages that are not recoverable under a breach of contract claim.

### D.    Plaintiff's Replevin Claim (Count VII) Should Be Dismissed

Plaintiff's claim for replevin (SASC ¶¶194-200) should be dismissed as a matter of law. The conclusory allegation that the defendants failed to surrender certain undefined "Sea Tow Know How" as required under the NCNDAs (*Id.* ¶196) is fatal, as "an action for...replevin can only be maintained if plaintiff alleges that defendant violated a legal duty independent from any contractual obligations." *Aleem v Experience Hendrix, L.L.C.*, 2017 US Dist LEXIS 113613, at *14 (SDNY 2017). Since the replevin claim is based solely on the alleged failure by defendants

to comply with their contractual obligations under the NCNDAs (SASC ¶196), it must be dismissed as duplicative of the breach of contract claim. *See Intelligen Power Sys., LLC v dVentus Techs. LLC*, 2015 U.S. Dist. LEXIS 71078, at *21 (S.D.N.Y. 2015).

### E.      The Count VIII Claims Pursuant to GBL §§ 349, 350-A Should be Dismissed

Sea Tow alleges in Count VIII that the Jaeger Defendants violated N.Y. GBL §§ 349 and 350-A (SASC ¶¶201-205). As alleged, the Jaeger Defendants refused to de-identify as a Sea Tow operated business with the "intent of misleading the purchasing public into assuming a connection with Sea Tow even though there is none." (*Id.* ¶202).   As a result, Plaintiff was damaged. (*Id.* ¶204).   These COAs are duplicative of the breach of contract claims, and are insufficiently pled.

In addition, these statutory claims require that the consumer harm occur in the State of New York, but as alleged, the damages all occurred in Florida.   GBL §349(a) "declares as unlawful 'deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service **in this state**.'" *Oswego Laborers' Local 214 Pension Fund v. Mar. Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995) (emphasis added).   GBL §350 "similarly declares unlawful '[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this [i.e., New York] state." *Mountz v Global Vision Prods.,* 3 Misc. 3d 171, 177 (Sup. Ct. N.Y. Co. 2003).   "To qualify as a prohibited act under N.Y. Gen. Bus. Law § 349, the deception of a consumer must occur in New York." *Goshen v Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (N.Y. 2002). So too, NY GBL § 350-A false advertising claims only exist if the customer was deceived in "this state" of New York. *Mountz*, *supra* at 177 (citing *Goshen*, 98 N.Y.2d at 325).   In the instant case, the alleged deceptive trade practices and advertising occurred in the state of <u>Florida</u>.   There is no allegation that consumers in New York have been deceived, nor would Sea Tow have standing to assert any claims on their behalf.   Sea Tow is not the "consumer" who was allegedly harmed.

29

To prevail under GBL §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012). *See Chin v Planet Motor Cars, Inc.*, 2016 U.S. Dist. LEXIS 47372, at *7 (E.D.N.Y. 2016).  To satisfy to the first element of the cause of action, "there must be a demonstration that the acts or practices have a broader impact on consumers at large. Thus, private contract disputes, unique to the parties would not fall within the ambit of the statute." *Id*. In this case, where there is merely a private contract dispute and no impact upon the public at large, there is no basis for a claim under N.Y. GBL § 349 or 350-A.  Count VIII must be dismissed.

## V.    CONCLUSION

Counts I, II, III, IV, V, VII and VIII of Plaintiff's SASC should be dismissed in their entirety under FRCP §12(b)(6). Plaintiff should also be required to reimburse the Jaeger Defendants for their costs and attorney's fees incurred for this motion under the fee shifting provisions of MA §6 and NCNDA §22.  The Jaeger Defendants seek all such further relief as may be just and equitable under the circumstances.

Dated:  New York, New York
        December 13, 2021

                                    The Richard L. Rosen Law Firm, PLLC

                            By:    _____/s/John A. Karol_____
                                    John A. Karol, Esq. (JK-9899)
                                    Richard L. Rosen, Esq. (RR-3114)
                                    Avi Strauss, Esq. (AS-1678)
                                    110 East 59th Street, 23rd Floor
                                    New York, NY 10022
                                    Tel.:   (212) 644-6644
                                    jak@rosenlawpllc.com
                                    rlr@rosenlawpllc.com
                                    *Counsel for Jaeger Defendants*

TO:     All counsel (via ECF)